Good morning, Your Honors. David Volekian, attorney for Benjamin Quinonez. Yes, you may make your argument. Thank you. Your Honor, I believe, Your Honors, it's unreasonable for a person to be sentenced to 40 years in prison when he enters a plea agreement with the understanding that he's admitting to 500 grams of a mixture of methamphetamine and admitting to laundering $2,000 of monies. In the probation report prepared by the probation officer, the probation officer mentions that upon review of all the investigatory reports in the case, he or she makes comments to all of the other alleged activities that Mr. Quinonez may have been involved in. She makes comments to that and requests an enhancement to the defendant's sentence. It's clear to assume that the record shows, based on the comments by the probation officer, that the defendant's attorney had all these records, had all these information by informants, single hearsay, multiple hearsay, declarants, who have testified that the defendant has come across the border, brought marijuana, involved in sales of other drugs and other activities. One could anticipate, based on relevant conduct, that at sentence, by preponderance of the evidence standard, the court can look at these items of evidence and enhance one sentence versus going to trial before a jury and being tried with a standard of beyond a reasonable doubt. The judge in the case commented that it may have been better off had you proceeded to trial in this case. This way, I would have had a better opportunity to sort out the evidence. The judge also said on the record, I'm hoping that what doesn't happen here is that it's going to be like a mini-trial at sentence. And that's exactly what happened. What was allowed is a three-day sentencing hearing. Hearsay statements were admitted where officers came and testified that hearsay number one or hearsay number two testified that Mr. Quinonez has done this more than once, has done this many times. Co-defendants who signed contracts, who cooperated under the 5K provisions testified against the defendant. These issues were used to enhance the defendant's sentence. The attorney in the very first few pages of the transcripts stated that it appears that I made a mistake, that Mr. Quinonez will not be able to get a safety valve because of his misdemeanor. Counsel, let me ask you this. Is the heart of your appeal here really claims of ineffective assistance of counsel? Yes, Your Honor. Well, we have a good deal of law that says that in a direct appeal, in a direct appeal from a conviction and sentence, we shouldn't reach ineffectiveness claims. They should be more properly considered on the basis of collateral review where you may be able to get an evidentiary hearing on what happened and how you were prejudiced. Understood. You understand that? Yes. So do you want us to reach the ineffectiveness claims here or not? Well, Your Honor. I mean, I guess my question is wouldn't you be just as well off if you pursued them? I'm kind of uncertain. The relief that I requested in my moving papers was to stay the appellate proceedings to allow me to pursue collateral remedies. I kind of agreed to that, and that may be, Your Honor, the proper remedy. The other issue, Your Honor, I have is how the judge respectfully allocated and assessed the proceedings and how he viewed the evidence and made his rulings. For example, in the case, the defendant pled to count. Count one was a conspiracy charge. It was suspended over a course of years. Count two was a possession charge. Defendant pled to the possession, agreeing that on a certain date he had certain drugs in his storage. That is the main charge. Relevant conduct was enhanced to enhance the defendant's sentence. His Honor enhanced, used a four-level leadership enhancement not based on claiming the main offense, the drug offense with relevant conduct, that defendant was an organizer and leader of a drug activity, but another charge. His Honor said that he felt that defendant was an organizer and leader of money laundering and used a four-level increase on a money laundering charge, which has a cap, to enhance his sentence on another charge, which is a tender-like offense. Let me take you back to the Chief Judge's question. What you're arguing now, I think, is that the judge made a mistake. Yes. That is different from ineffectiveness of counsel. Agreed, Your Honor. So do you agree with the Chief Judge that we can't consider under our case law, we shouldn't consider ineffectiveness at this stage, but you do have a right to collateral attack, which you recognize and suggest that we might consider doing that? Your Honor, then would it be appropriate to request that these proceedings be stayed pending collateral attack and then come back on appeal after maybe flushing out more of these issues with depositions and other records? We can discuss that. I think that that – but I think that would be highly unusual. Here's the difficulty I'm having with your whole case, okay? You have enumerated four instances where you claim that there was ineffective assistance of counsel. And each one of them is a failure to object, right? Yes. Now, if that lawyer had objected, presumably he would have made the objection to the district court right after the district court had made a finding, for example, that your client had obstructed justice. Now, you tell me what good that would have done. Well, Your Honor, had he – not only to object, but to properly attack or respond, one remedy would have been to not – Your assignment of error is, or your claim on appeal is, that he was ineffective because he failed to object to the finding of an obstruction of justice. Your Honor, what he – after the evidence was presented, the attorney said nothing, did nothing to try to explain or prove. You mean he failed to make an argument? Yes. That's different from failing to object. Well, what argument would he have made? Well, Your Honor, for example, for the obstruction of justice, defendant did not dispute all of the relevant conduct. He could have said, Your Honor, I object. Mr. Quinones did deny some of the issues in this case, whereas he – not only did he plead guilty, he admitted to items, transactions outside the record in the plea agreement. Well, okay. It may be that in collateral proceedings you could say that he should – that the lawyer shouldn't have done that because he knew a lot of other things that could have been brought into the record. But we can't consider that here. So on this record, what would it have done if the counsel had said, I object? Your Honor, if I understand, by him objecting, he could have corrected the court or brought to the court's attention that relevant conduct, failing to object, which he failed to object on the issue of obstruction, he could have explained to the judge that obstruction doesn't mean denying one or two non-significant issues or being confused as to some issues. For example, defendant – It's a matter of law. Yes. And you have that issue squarely in front of us. Yes. Now, what difference does it make whether the lawyer objected? You have that issue in front of us and you have all these legal issues in front of us because you make the claim that you had ineffective assistance of counsel for failing to object, for example, to a finding of an obstruction of justice. Now you have before us an assignment of error saying that the district judge made an error in finding obstruction of justice. Now, what good would it have done for that lawyer to have objected? You still have the merits of that claim here. Do you not? Yes, I believe so, Judge. And you argue it in your brief. Now, what difference does it make whether a judge – a lawyer has to get up and object to everything that a district judge says? That doesn't go to getting very far, and it doesn't forfeit anything for your client here, does it? I don't think it does, Your Honor. Now, where is the inadequacy of counsel? Your Honor, with the limited time – You can answer the question. Okay. Your Honor, the inadequacy is one option could have been to not put on your client first at a sentencing hearing. That's a different issue than failure to object. That's all I'm asking is that you focus this on what you're talking about. Okay? Your Honor, I think I understand now. The failing to object would have allowed counsel to explain to the court that he did not obstruct justice. Okay. And present evidence accordingly. Okay. Okay. Thank you. Thank you. May it please the Court. Your Honors, counsel, my name is Michael Figa. I'm an assistant United States attorney from the District of Idaho. I was counsel of record for the government in this case and represent the United States. As the Court knows from the facts, as far back as 1997, Mr. Quinonez was providing methamphetamine and marijuana in the Pocatello, Idaho and Southeast Idaho area. He was known by everyone, including admittedly himself, as Uncle, providing methamphetamine and marijuana, which was smuggled up in car tires. At sentencing, Mr. Quinonez objected primarily to being a member of the conspiracy and also objected to the quantities attributable to himself. He also objected at sentencing to any role in the offense enhancement, arguing he never directed the activities of others. After the three-day sentencing, the Court raised additional issues, asking the party – excuse me, after a three-day sentencing hearing or during this hearing, the Court raised two additional issues, asking the parties to address the issue of applicable quantities as well as whether or not the defendant was entitled to acceptance of responsibility. One of the major issues, and Mr. Balakian raises here, was relevant conduct and what relevant conduct should be attributable to the defendant. I would note that pursuant to the defendant's plea agreement, recognized, I believe, on page two of the plea agreement, in exchange for dismissal of count one, the defendant, and I quote, acknowledges, agrees, and waives objection to the fact that the Court will consider relevant conduct alleged in these dismissed counts in arriving at an appropriate sentence. As a practical matter, what good did the plea agreement do in? Pardon me, Your Honor? As a practical matter, what good did the plea agreement do in? In several respects, Your Honor. First of all, we did concede a two-point reduction in the defendant's guideline for agreeing to deportation. That was a concession made in the plea agreement. Also, Your Honor, had the defendant abided by the terms of the plea agreement in terms of accepting responsibility and admitting and not frivolously contesting sentencing issues, he would have been entitled to a three-point acceptance of responsibility reduction. That was contemplated by the plea agreement, and indeed, from my perspective, I believe that the defendant would do such, would certainly not frivolously contest the issues, and as such, the benefit of the plea agreement would have been his. I would note, Your Honor, that he, regardless of the issues that are raised before this Court today, did still receive several benefits as a result of the plea agreement and the hearing by the district court. He received the reduction for agreeing to deportation. We never objected to that, regardless of any of the issues raised at sentencing. Similarly, Your Honor, and this leads me to the other point. How big a reduction did he get? Two-point reduction. What was the practical effect of it? Well, the practical application of that, quite honestly, was nil in the sense that the guideline reduction didn't occur. I would note, Your Honor, though, and this issue applies, and if I may, towards the end, reserve just a few minutes to discuss the applicability of the Blakeley decision for this case. Yeah, please. I would note, Your Honor, that one of the issues that was raised was the fact that Mr. Quinonez ultimately, his guidelines were not at life. They were below life, still in the 360-to-life range. There was some suggestion that the government and indeed the Court recognized that this may have been a case that called for a mandatory life sentence. Similarly, there was some consideration that I gave to the fact that we may argue for a life sentence, but given the fact that, again, I felt by virtue of the plea there should be some consideration made, ultimately the Court declined to sentence at a life sentence Mr. Quinonez to a life sentence. Now, I take it from your position in the brief and so on that you do not claim that this defendant forfeited any issue by way of failure to object. No, Your Honor. Just the opposite. Every one of the issues that is raised on the merits here are not forfeited by reason of any failure to object. Am I right? That is correct.  I'm saying I'm not in favor of that position. And even though you argue, you argue the – I guess your argument on the claims of ineffective assistance is that it just didn't make any difference. It didn't hurt anybody. There was no prejudice. In fact, I would submit to the Court that the record is sufficiently developed. Yeah. Well, I suppose conceivably if he wanted to make a different claim other than a failure to object, if there was something outside the record that he – that the lawyer didn't bring into the record, that could be raised separately. Certainly, which would still be his right after conclusion of this appeal, Your Honor. And quite honestly, I contemplate that that will likely happen. Well, now, do you have a preference? I think sometimes the Court does touch upon these assignments or claims of error for ineffective assistance on direct appeal. Sometimes we talk about them. Sometimes we say we don't touch them, leave them alone for future collateral attack. Do you have a preference as to what we do here? Well, in this regard, Your Honor, and certainly I suspect, although I don't know this, that there may be precedent that by virtue of these issues being fully litigated, they may be closed at this point. Certainly, our preference is for, you know, conclusion of this case, and this is an old case, conclusion of these issues. In that regard, Your Honor, I suppose my primary preference would be that with regard to whether or not the defendant was prejudiced by a failure to raise objections and that being an alleged ineffective assistance of counsel, our position is the record is clear on that, the Court considered these issues, and certainly it could be submitted based upon the clarity of the record. Or we could say there's no plain error. Certainly. But if we did that, he would still have a right to file a 2255. Yeah. In fact, Your Honor, I contemplate that he likely will on some other issue. Absolutely. Absolutely. I'm sorry, Your Honor. Well, he would have a – wouldn't he have a right to file it on ineffectiveness? I would suspect. Absolutely, Your Honor. And raise, as His Honor mentioned, raise alternate issues to the failure to object, regardless of – Recast them. Right. Okay. Yes. With my remaining time, Your Honors, I would address the specific issues. While I see that I don't have much time, I do want to address just very briefly I think I'll start with the issue of the district court's failure to group and would note, as it's set forth in my brief, that it's my perspective that the district court did properly group offenses for assignment of guidelines. And with regard to obstruction of justice, I would note that the district court made specific findings that Mr. Quinonez had not been truthful. And, in fact, as the record shows, at one point the district court had to stop proceedings because it believed that Mr. Quinonez was actively engaging in perjury. Alternately, it believed that those that testified contrary to Mr. Quinonez's testimony – I believe the court, and I'm paraphrasing, found one key witness extremely truthful and reliable based upon the court's perception of the testimony. Finally, with regard to the issue of quantities, although the defense on appeal raises the issue of applicability of quantities prior to 2000, I'd first note that relevant conduct certainly could encompass any offense back to 1997, the date charged in the conspiracy. However, in this case, Your Honor, I think the record is clear that the only drugs that the court considered for relevant conduct were drugs that actually could be attributed to the defendant prior to 2000, 2001. Finally, with my remaining time, Your Honor, if I could, I'd like to address the applicability of the Blakeley decision. With regard to that, Your Honor, I would note that it is clear from the record that the district court would not have departed downward regardless of whether or not it felt it had the discretion to do so. The court, in imposing the sentence on Mr. Quinonez, noted that in – Judge Winmill noted that in his time on the bench, this is one of the two, if not three, largest drug cases that he'd ever seen. He further noted just prior to imposing a 40-year sentence on Mr. Quinonez that he was giving serious thought to imposing a life sentence on Mr. Quinonez. Nevertheless, he then imposed a sentence of 40 years, but specifically said in imposing the sentence that he felt that it was absolutely inappropriate that any less time should be imposed that would allow Mr. Quinonez to be released any prior to the late terms of his life. As such, Your Honor, I believe the record is clearly established that even if Judge Winmill felt he had discretion to depart from the guidelines, he would not have done so, and the Blakeley decision would not apply in this case. See, my time's up. I'd be happy to respond to any questions the Court has. I'm here to be any. Thank you. Do either of you have any questions for the appellant? No. No. All right. Thank you. Thank you. Case just argued is submitted for decision.
judges: Schroeder, Alarcon, Leavy